SHIRLEY C. WANG (SBN 187635)
swang@saberlaw.com
MICHELLE L. YOUNKIN (SBN 215246)
myounkin@saberlaw.com
CHRISTINA M. FORST (SBN 306632)
cforst@saberlaw.com
SABER LAW GROUP
101 Howard Street, Suite 400
San Francisco, California 94105
Telephone:    (415) 278-1400
Facsimile:    (415) 278-1401

Attorneys for Defendants
MERCY HOUSING, INC. DBA NEBRASKA
MERCY HOUSING INC.; MERCY HOUSING
CALIFORNIA; and MERCY HOUSING
MANAGEMENT GROUP, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY SKOCHKO,<br><br>             Plaintiff,<br><br>v.<br><br>MERCY HOUSING, INC. DBA NEBRASKA MERCY HOUSING INC.; MERCY HOUSING CALIFORNIA; and MERCY HOUSING MANAGEMENT GROUP, INC.,<br><br>             Defendants. | Case No.: 3:20-cv-08659-JSC<br><br>**DEFENDANT MERCY HOUSING, INC., MERCY HOUSING CALIFORNIA, AND MERCY HOUSING MANAGEMENT GROUP, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:  August 11, 2022<br>Time:  9:00 a.m.<br>Dept.:  Courtroom 8<br>Judge:  Hon. J. Corley<br><br>Complaint Filed: December 8, 2020 |

# TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................................... 4

II. PLAINTIFF HAS FAILED TO PRESENT ADMISSIBLE EVIDENCE TO SHOW THAT TRIABLE ISSUES OF MATERIAL FACT EXIST ........................................ 5

    A. Defendants' Proffered Evidence Is Relevant And Admissible. ..................... 5

    B. Plaintiff Has Failed To Present Admissible Evidence That An ADA-Accessible Hotel That Would Accept Her Hospital Bed Was Available In 2019. ................................................................................................................ 8

    C. Plaintiff Has Failed To Proffer Admissible Evidence That Defendants Denied Her Reasonable Accommodation Requests. ................................................ 10

        1. Plaintiff Has Failed To Proffer Admissible Evidence That The Alternative Accommodations Defendants Offered Were Unreasonable. ................................................................................... 10

        2. Defendants Were Not Required To Track And Record Every Entity They Contacted On Plaintiff's Behalf. ............................................. 12

    D. Defendants Have Established That It Would Be Both An Undue Administrative Burden And Fundamental Change In Each Defendants' Operations To Force A Third Party To Change Its Policies And Procedures. ............ 12

    E. Plaintiff Has Failed To Present Admissible Evidence That Defendants Intentionally Discriminated Against Her Under The Unruh Act. ............................... 13

    F. Plaintiff Has Failed To Present Evidence Of Defendants' Liability For Punitive Damages. ....................................................................................... 15

III. CONCLUSION ......................................................................................................... 18

# Table of Authorities

**Cases**

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986) .................................................................. 5, 15
*Castellano v. Access Premier Realty, Inc.*, 181 F. Supp.3d 798 (E.D. Cal. 2016) ..................................... 9
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................................... 5
*College Hosp. Inc. v. Superior Court*, 8 Cal. 4th 704 (1994) ............................................................ 18
*Cooper v. United Air Lines, Inc.* (N.D. Cal. 2015) 82 F.Supp.3d 1084 ................................................ 6
*DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175 (9th Cir. 2006),
   *cert. denied*, 549 U.S. 1216 (2007) .......................................................................................... 4
*Earll v. eBay, Inc.* No. 5:11-CV-00262-JF HRL, 2011 WL 3955485 at *4 (N.D. Cal. Sept. 7, 2011) ... 14
*Elliot v. QF Circa 37*, LLC, 2018 WL 2933467 *12 (S.D. Cal. 2018) ................................... 4, 9, 10
*Evans v. ForKids, Inc.*, No. 2:17-cv-0153, 2018 WL 524868, at *8 (E.D. Va. Jan. 23, 2018) ................. 9
*Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir.2003) ............................................................. 8
*Giebeler v. M & B Assocs.*, 343 F.3d 1143 (9th Cir. 2003) ................................................................ 9
*Glasby v. Mercy Housing, Inc.*, No. 17-CV-02153-DMR, 2017 WL 4808634 at *6
   (N.D. Cal. Oct. 25, 2017) ....................................................................................................... 14
*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*
   742 F.3d 414 (9th Cir. 2014) .................................................................................. 5, 13, 14, 15
*Hankins v. El Torito Restaurants, Inc.* 63 Cal.App. 4th 510 (1998) .................................................. 14
*Johnson v. Brenneke*, 2022 WL 981295 * 8 (D. Or. Feb. 23, 2022) .................................................. 10
*Koebke v. Bernardo Heights Country Club*, 36 Cal.4th 824 (2005) .................................................. 13
*Kolstad v. American Dental Ass'n,* 527 U.S. 526 (1999) ..................................................... 15, 16, 18
*Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.* 475 U.S. 586 (1986) .............................. 5
*McElwee v. Cty. of Orange*, 700 F.3d 635 (2d. Cir. 2012) ................................................................ 10
*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.* (9th Cir. 2000) 210 F3d 1099 ....................... 4
*Okafor v. Department of Conservation* (9th Cir. 2019) 775 Fed.Appx. 321 .................................. 5, 7
*Rijhwani v. Wells Fargo Home Mortgage, Inc.* (N.D. Cal., Jan. 28, 2015,
   No. C 13-05881 LB) 2015 WL 848554, at *3 ............................................................................ 6
*Rodriguez v. Pataki*, 293 F.Supp.2d 305 (S.D.N.Y.2003) .................................................................. 6
*Smith v. Wade*, 461 U.S. 30 (1983) ......................................................................................... 15, 18
*Snapp v. United Transportation Union* (9th Cir. 2018) 889 F.3d 1088 ............................................. 6
*Sw. Fair Housing Council v. WG Chandler Villas SH LLC* 2021 WL 1087200, at *13 (D. Ariz. 2021) . 9
*The Fair Housing Council of San Diego, Joann Reed v. Penasquitos Casablanca Owner's Ass'n*,
   381 Fed.Appx. 674 .............................................................................................................. 15
*U.S. v. California Mobile Home Park Management Co.*, 29 F. 3d 1413 (1997) ................................. 12
*Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002) ............................................................................ 9
*Weiss v. 2100 Condo. Ass'n*, 941 F.Supp.2d 1337 (S.D. Fla. 2013) .................................................. 10
*Wong v. Regents of University of California*, 192 F.3d 807 ....................................................... 10, 12

**Statutes**

42 U.S.C. § 3603(b)(2) ...................................................................................................................... 12
42 U.S.C. §§ 3602(b) ....................................................................................................................... 12
Cal. Civ. Code § 3294 ....................................................................................................................... 18

**Rules**

Fed. R. Civ. Proc. 56(a) ...................................................................................................................... 5
FRCP 56(c)(1)(A) ............................................................................................................................... 5
Rule 807 ............................................................................................................................................. 8

**Treatises**

11–56 Moore's Fed. Prac.- Civ. § 56.14[1][c] ..................................................................................... 6
7 James Wm. Moore, et al., Moore's Federal Practice § 30.25[3] (3d ed. 2016) ................................ 6
Cal. Prac. Guide: Fed. Civ. P. Before Trial § 11:1414 (The Rutter Group 2014) ................................ 6

## I. INTRODUCTION

Plaintiff Sydney Skohko ("Plaintiff") has not adduced evidence that creates a triable issue of material fact that Defendants failed or refused to provide her with reasonable accommodations under the Fair Housing Act ("FHA") and related state statutes, or intentionally discriminated against her under California's Unruh Act.  With respect to the reasonable accommodation claims, Plaintiff has not met her initial burden to prove that it was *possible* and therefore *reasonable* for Defendants to (a) effectuate her request for an ADA-accessible hotel room that would *also* accept her personal hospital bed in June 2019 and (b) to rent her a hospital bed not knowing its make or model in November 2019.

The "reasonableness" at issue here is whether (a) Defendants could change the policies of *third parties* that refused to accept Plaintiff's hospital bed in June 2019; and (b) whether – over a holiday weekend when Plaintiff's attorney claimed she had received authorization from Extended Stay America ("ESA") to rent a hospital bed and *did not provide the bed specifications to Defendants* – it was unreasonable for Defendants to offer her reimbursement for an immediate rental. *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006), *cert. denied*, 549 U.S. 1216 (2007); *Elliot v. QF Circa 37*, LLC, 2018 WL 2933467 *12 (S.D. Cal. 2018).  On the facts presented in Defendants' opening brief and the applicable case law, the answer to both questions is "no," and Plaintiff has not established a *prima facie* case for failure to accommodate.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*. (9th Cir. 2000) 210 F3d 1099, 1102-1103.

The Opposition ignores Defendants' substantial evidence of their efforts to provide Plaintiff with the accommodation of her choice and purposefully misconstrues Defendants' affirmative defenses.  The undue burden and fundamental alternation in Defendants' operations was **not** moving Plaintiff's bed, though case law suggests this would be a valid defense.  It is undisputed that Defendants intended to move Plaintiff's bed in June 2019 despite this not being their policy – that decision was an alteration to Defendant Mercy Housing Management Group, Inc.'s ("MHMG") rules and policies under the FHA.  The undue burden was and is Defendants' inability to *guarantee* a particular outcome based on the policy of a third party.

Defendants' provision of three alternatives in June 2019 **stands unchallenged** – and Plaintiff has produced no evidence that the alternative accommodations were unreasonable other than her own

argument that bed was "necessary" because it had been prescribed to her. Importantly, Plaintiff had previously relocated to hotels without her hospital bed and **chose** to relocate to the ESA hotel without it. Once there, Plaintiff had no further communications with Defendants or ESA other than letting Ms. Dogan know that Plaintiff was "fine" at the hotel without her bed. No fair-minded jury could return a verdict for Plaintiff's reasonable accommodation claims on the evidence presented. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 252 (1986).

Finally, Plaintiff's Unruh Act claim also fails for lack of proof. In the Opposition, Plaintiff produced no admissible evidence of Defendants' willful affirmative misconduct required by this Circuit to establish intentional discrimination. *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414 (9th Cir. 2014) ("*GLADD*"). Because there is no competent evidence that Defendants violated federal and/or state fair housing and anti-discrimination laws, summary judgment in favor of Defendants should be granted. Fed. R. Civ. Proc. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986); *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp*. 475 U.S. 586-587 (1986).

## II. PLAINTIFF HAS FAILED TO PRESENT ADMISSIBLE EVIDENCE TO SHOW THAT TRIABLE ISSUES OF MATERIAL FACT EXIST

### A. Defendants' Proffered Evidence Is Relevant And Admissible.

Plaintiff's objections to Defendants' evidence are unfounded and should be overruled. <u>First</u>, Plaintiff takes issue with the fact that Defendants' provided declarations of both a fact witness (Nakeema Dogan) and a FRCP 30(b)(6) witness (Melissa Weber) in support of their motion. Plaintiff's suggestion that Defendants are limited to only their 30(b)(6) witness is incorrect. FRCP 56(c)(1)(A) permits a party to rely on affidavits or declarations and does not limit the type of witnesses that present them. Nor does it set any parameters particular for corporate entities. Defendants are entitled to utilize testimony from *both* a 30(b)(6) witness and any percipient witnesses. *Okafor v. Department of Conservation* (9th Cir. 2019) 775 Fed.Appx. 321, 322–323 (court did not err by considering declarations provided to supplement the deposition of its corporate designee).

While it is true that an entity is not permitted to defeat a motion for summary judgment based solely on a conflicting affidavit, this "general proposition should not be overstated, however, because it

applies only where the purportedly conflicting evidence truly, and without good reason or explanation, is in conflict, i.e., where it cannot be deemed as clarifying or simply providing full context for the Rule 30(b)(6) deposition." *Snapp v. United Transportation Union* (9th Cir. 2018) 889 F.3d 1088, 1103. Testimony from a 30(b)(6) witness is also "not binding against the organization in the sense that the testimony can be corrected, explained and supplemented, and the entity is not 'irrevocably' bound to what the fairly prepared and candid designated deponent happens to remember during the testimony. *Id.*; 7 James Wm. Moore, et al., Moore's Federal Practice § 30.25[3] (3d ed. 2016).

Plaintiff has not identified any areas of direct conflict between the declarations of Ms. Weber and Ms. Dogan. She has not shown how the statements in Ms. Dogan's declaration are new or different from the testimony provided by Defendants' 30(b)(6) witness. In fact, Plaintiff admits that when Ms. Weber did not know the answers to questions posed by Plaintiff's counsel, Ms. Weber stated that Ms. Dogan would have the information. Defendants have provided this information. Dkt. 71, p. 3:13-16.

<u>Second</u>, it is undisputed that a corporate designee is not required to have personal knowledge. *Cooper v. United Air Lines, Inc*. (N.D. Cal. 2015) 82 F.Supp.3d 1084, 1096, citing 11–56 Moore's Fed. Prac.- Civ. § 56.14[1][c] "[t]he testimony of a Rule 30(b)(6) corporate agent deponent may be presented on motion for summary judgment, even though not based on personal knowledge, because a Rule 30(b)(6) witness need not have personal knowledge of the facts to which he or she testifies.").

Plaintiff now objects that Defendants' corporate designee testified about "decisions and actions in relation to Plaintiff's relocation." Dkt. 71 p. 2:11-13.  This is precisely the corporate designee's task. Plaintiff cannot now object to the fact that this individual did not have personal knowledge when the deposition was noticed for a Rule 30(b)(6) witness. It is also settled that a party need not produce the representative with the *greatest* knowledge about a subject; instead, it need only produce a person with knowledge whose testimony will be binding on the party. *Rijhwani v. Wells Fargo Home Mortgage, Inc*. (N.D. Cal., Jan. 28, 2015, No. C 13-05881 LB) 2015 WL 848554, at *3, citing *Rodriguez v. Pataki*, 293 F.Supp.2d 305, 311 (S.D.N.Y.2003) and Cal. Prac. Guide: Fed. Civ. P. Before Trial § 11:1414 (The Rutter Group 2014).

Plaintiff next argues that Defendants "made no showing that Ms. Dogan was unavailable at the time of the 30(b)(6) deposition" despite Ms. Dogan's role as a "relocation coordinator."  Dkt. 71 p. 8:8-

9. These statements are akin to those made by the plaintiff in *Rijhwani*, wherein, regardless of the plaintiff's feelings that another employee may have "a lot of knowledge," the corporation was free to designate an employee of its choosing for a 30(b)(6) deposition <u>while the plaintiff remained free to subpoena the specific employee</u>.

In this regard, there is no evidence that Plaintiff was ***unable*** to obtain testimony from Ms. Dogan prior to Defendants' submitting her declaration. There is no dispute that Plaintiff was aware of the importance of Ms. Dogan's testimony. Plaintiff herself was contemporaneously aware of Ms. Dogan's involvement and testified that she communicated with Ms. Dogan in preparation for, and during, the July 2019 Relocation. Dkt. 68-1 (Younkin Decl.) ¶ 4, Ex. C, Skochko Depo. Vol. 1 p. 75:7-19, 77:24-78:13, 83:21-84:22, 90:15-21. In connection with this litigation, Ms. Dogan was listed as a witness in Defendants' Rule 26 Initial Disclosures.  Plaintiff noticed Ms. Dogan's deposition on multiple occasions, even going as far to seek the intervention from this Court to set a deposition date. Dkt. No. 35; Dkt. 68-1 (Younkin Decl.) ¶ 26.  Plaintiff admits that Ms. Dogan's testimony is important. Dkt. 71, p. 7:6-8, 7:13-16.  Despite all of this, <u>Plaintiff never deposed Ms. Dogan</u>. Plaintiff cannot rely on her own lack of diligence in obtaining deposition testimony from this percipient witness to defeat summary judgment. *See Okafor*, 775 Fed.Appx. at 322–323 (holding that additional fact witnesses who provided declarations were disclosed during the Rule 30(b)(6) deposition, but Plaintiff did not depose those witnesses, obtain any declarations except his own, or seek additional time to conduct further discovery and allowing the district court to consider declarations supplementing the deposition testimony of its Federal Rule of Civil Procedure 30(b)(6) designee).

<u>Plaintiff takes specific issue with Paragraph 9</u> of Ms. Dogan's declaration as inadmissible hearsay. Dkt. 71, p. 3:18-20. In this paragraph, Ms. Dogan is discussing a conversation that took place between herself and Plaintiff. Any statement attributed to Plaintiff qualifies for the admission of party opponent exception to hearsay. Fed. Rules of Evid. 801(d). There are no statements attributed to Ms. Dogan, to qualify as an out of court statement. As to Ms. Dogan's recollections about what Plaintiff did not say during this conversation, those recollections would not qualify as a "statement" under the hearsay rule. Instead, Ms. Dogan is providing her information about her ***recollection***, something that she has the required personal knowledge to do.

Plaintiff's objection to Paragraph 14 of Ms. Dogan's declaration as lacking foundation is also unfounded. Dkt. 71, p. 3:21-23. Ms. Dogan stated that she was a Relocation Coordinator for Mercy Housing during the relevant time. Dkt. 68-3, ¶ 2. In that position, she would assist both staff and residents with the relocation process. *Id*. Her supervisor during this process was Tia Ramirez. Dkt. 68-3, ¶ 3. Ms. Dogan worked with both Plaintiff and Tia Ramirez to accommodate Plaintiff's requests. Dkt. 68-3, ¶¶ 8-11. This included investigating different options, including a convalescent home, and reporting back on that option. Moreover, this statement from Ms. Dogan is confirmed in a contemporaneous email. Dkt. 68-2 (Weber Decl.) ¶ 52 & Ex. K. There is also no evidence that this underlying evidence could not be provided in an admissible form at trial, such as by live testimony. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir.2003).

Plaintiff's objection to Exhibit J attached to Ms. Weber's declaration should be overruled because the document is not inadmissible hearsay. Dkt. 71, p. 3:25-26. Defendants do not offer Exhibit J for the truth of the matter asserted – that non-party Extended Stay America cannot "remove the furniture at this location." Defendants have already expressed that they do not own, control, manage, operate, or otherwise direct any aspect of Extended Stay America. Dkt. 68-2 (Weber Decl.) ¶ 43. Instead, this exhibit is offered to establish what Defendant employees knew and what was communicated to them at the time. This exhibit informs Defendants' belief as to what was feasible in June 2019. To the extent that Plaintiff continues to argue that this document is hearsay, it falls under the records of a regularly conduct activity exception, being properly authenticated by Defendants' 30(b)(6) witness as part of Mercy Housing's regular activity of receiving, reviewing, and attempting to grant reasonable accommodation requests. Dkt. 68-2 (Weber Decl.) ¶¶ 5-6. Moreover, since this evidence goes to Mercy Housing's knowledge and intent, placed at issue by Plaintiff's punitive damage claims, it is also admissible under Rule 807's residual exception; it is supported by sufficient guarantees of trustworthiness and is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

**B.  Plaintiff Has Failed To Present Admissible Evidence That An ADA-Accessible Hotel That Would Accept Her Hospital Bed Was Available In 2019.**

On summary judgment, as at trial, Plaintiff has the burden to establish that the requested accommodation was possible and therefore reasonable. *Sw. Fair Housing Council v. WG Chandler*

*Villas SH LLC* 2021 WL 1087200, at *13 (D. Ariz. 2021) (citing *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002)). Ordinarily, an accommodation is reasonable under the FHA when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens. *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1157 (9th Cir. 2003).

However, courts interpreting reasonableness in the context of preferred housing and transfers have determined that the requested housing <u>must actually be available</u> before a failure to relocate constitutes a "refusal" to provide the accommodation. *Elliot,* 2018 WL 2933467, at *12 ("Defendants have also shown that they did not refuse [plaintiff's] reasonable accommodation request to the extent [Plaintiff] sought transfer to a two-bedroom unit because no units were available when [plaintiff] submitted her request"); *Evans v. ForKids, Inc.*, No. 2:17-cv-0153, 2018 WL 524868, at *8 (E.D. Va. Jan. 23, 2018) (granting summary judgment on reasonable accommodation claim when defendant showed that no units were available to satisfy plaintiff's transfer request).[1]

Plaintiff's reliance on *Castellano v. Access Premier Realty, Inc.*, 181 F. Supp.3d 798 (E.D. Cal. 2016), to reach the opposite conclusion is misplaced. <u>First</u>, the *Castellano* landlord owned and controlled the at-issue apartment complex. Here, it is undisputed that Defendants do not own, control, manage, operate, or otherwise direct any Extended Stay America hotels or any other hotels. Dkt. 68-2 (Weber Decl.) ¶¶ 26-27; 51. <u>Second</u>, the *Castellano* defendants did not "seriously contest" plaintiff's factual claims regarding the reasonableness of providing an exception to the property's "not pet" rule. Here, Defendants absolutely challenge whether – based on the information available to them in June 2019 – it was possible to relocate Plaintiff an ADA-accessible hotel room that would also accept her personal hospital bed, including filing Motion for Summary Judgment addressing this critical issue. Dkt. 68.

<u>Third</u>, the presumption of reasonableness is not retroactive. In *Castellano,* the landlord had ***previously*** granted support animal requests to other tenants ***before*** denying the plaintiff's request for a cat. *Castellano*, 181 F.Supp.3d 798 at 807; *see also Wong v. Regents of University of California*,

---

[1] These cases involve the defendant's own stock of units and not those of a third party over which the defendant landlord had no control. Plaintiff has cited no case law imposing liability under the FHA, FEHA or other California statutes on landlords who rely on the representations of third-party hotels regarding the hotel's policies/availability when temporarily relocating tenants.

192 F.3d 807, 820 ("An institution's past decision to make a concession to a disabled individual does not obligate it to continue to grant that accommodation in the future, nor does it render the accommodation reasonable as a matter of law") (emphasis added).  Here, Plaintiff suggests that because Defendants were able to rent her a hospital bed and provide an ADA-accessible hotel room in March of 2021[2] the same was possible in 2019.  No reasonable juror would draw this temporally backward inference.

Finally, unlike *Castellano*, Plaintiff has not put forth any evidence that Defendants successfully transferred other tenants' hospital beds to hotels prior to her June 2019 relocation or effectuated the delivery of a rented hospital bed to a third party without specifications and without that party's pre-approval. (November 2019 Relocation).

### C. Plaintiff Has Failed To Proffer Admissible Evidence That Defendants Denied Her Reasonable Accommodation Requests.

#### 1. Plaintiff Has Failed To Proffer Admissible Evidence That The Alternative Accommodations Defendants Offered Were Unreasonable.

Contrary to Plaintiff's argument in the Opposition, tenants are not entitled to the accommodations of their choice if the landlord believes the requested accommodation is not possible. In such cases, as here, the landlord may offer reasonable alternatives. *Elliot*, 2018 WL 2933467, at *12; *Johnson v. Brenneke*, 2022 WL 981295 * 8 (D. Or. Feb. 23, 2022) (summary judgment granted where alternative not available); *McElwee v. Cty. of Orange*, 700 F.3d 635, 641 (2d. Cir. 2012) ("Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice"); *Weiss v. 2100 Condo. Ass'n*, 941 F.Supp.2d 1337, 1344 (S.D. Fla. 2013) (granting summary judgment on accommodation claim when defendant offered a reasonable accommodation, even if plaintiffs preferred a different accommodation).

This is precisely what Defendants did in June 2019. Dkt. 68-3 (Dogan Decl.) ¶ 11; Dkt. 68-2 (Weber Decl.) ¶¶ 3, 8-10, 12-13, 43, 50-55, 72; Dkt. 68-1 (Younkin Decl.) Ex. F, Weber Depo. Vol. 1 p. 162:2-15; *Id*. Ex. G, Weber Depo. Vol. 2 p. 249:25-250:13; 252:12-253:3; 253:17-254:4. Defendants'

---

[2] Defendants object to evidence of events in 2021 based on relevance. Fed. R. Evid. 401; *see also* Dkt. 73 at p. 20-17-23:10.

evidence shows that they had every intention of finding an ADA-accessible hotel that would accept Plaintiff's personal hospital bed. Dkt. No. 68-1 (Younkin Decl.) ¶ Ex. F Weber Depo. Vol. 1 p. 162:2-15); *Id*. Ex. G, Weber Depo. Vol. 2 p. 249:25-250:13; 252:12-253:3; 253:17-254:4).  Defendants searched for such housing but were unable to locate such a facility. Dkt. 68-3 (Dogan Decl.) ¶ 11; Dkt. 68-1 (Younkin Decl.) Ex. F, Weber Depo. Vol. 1 p. 131:21-132:2; 132:8-25; 143:6-16); Dkt. 68-2 (Weber Decl.) ¶¶ 3, 8-10, 12-13, 50-55.  Accordingly, as things stood on June 19, 2019, Plaintiff's requests were not *simultaneously* possible.  Dkt. 68-2 (Weber Decl.) ¶¶ 3, 8-10, 12-13, 50-55; Dkt. 68-1 (Younkin Decl.) Ex. F, Weber Depo. Vol.1 p. 162:2-15; 183:4-184:7.

Despite her own testimony that a hospital bed was more important than an ADA-accessible room and her counsel's argument now that "any alternative accommodation without a bed is not a reasonable one," Plaintiff *chose* to relocate to the ESA and, once there, told Ms. Dogan that she was "fine." Dkt. 68-3 (Dogan Decl.) ¶¶ 16-17; Dkt. 68-2 (Weber Decl.) ¶ 8-10, 12-13, 61.  She did not communicate further with Defendants or with ESA. Dkt 68-1 (Younkin Decl.) Ex. D, Skochko Depo. Vol. 2 p. 219:18-22; 224:25-225:3; 230:21-231:16); Dkt. 68-2 (Weber Decl.) ¶¶ 8-10, 12-13, 61-64; Dkt. 68-1 (Younkin Decl.) Ex. H, Saldana Depo. p. 70:8-72:10; 72:15-73:14; 73:15-22; 74:9-25; 75:1-11; 77:17-24.

<u>Similarly, in November 2019</u>, and consistent with Plaintiff's decision to stay in the ADA-compliant hotel room during the July 2019 relocation, Defendants contacted the Extended Stay America and requested an ADA room for Plaintiff. Dkt. 68-2 (Weber Decl.) ¶¶ 8-10, 12-13, 67-68, 72; Dkt. 68-1 (Younkin Decl.) Ex. D, Skochko Depo. Vol. 2 p. 240:17-241:11; 241:17-24. Plaintiff did not complain or communicate about the lack of a hospital bed to MHMG once she got to the hotel, even though she spoke to Ms. Escobedo on the phone.  Dkt. 68-2 (Weber Decl.) ¶¶ 3, 8-10, 12-13, 69, 76-77 & Ex. N.

When Plaintiff's attorneys contacted defense counsel (seven days into Plaintiff's relocation) over a holiday weekend to request that MHMG rent Plaintiff a hospital bed without providing either (a) the name of the hotel employee that authorized the request or (b) the specifications for Plaintiff's bed, Defendants offered to reimburse Plaintiff for up to $1,500 for the cost to immediately rent a bed. Dkt. 68-1 (Younkin Decl.) ¶ 24 & Ex. U.; *Id*. at Ex. G, Weber Depo. Vol 2 p. 310:9-24; 313:8-18; Dkt. 68-2 (Weber Decl.) ¶ 3, 8-10, 12-13, 82, Ex. P.  Though not Plaintiff's first choice, under the time

1 constraints, holiday weekend and lack of bed make and model, the alternative Defendants provided was reasonable.

### 2. Defendants Were Not Required To Track And Record Every Entity They Contacted On Plaintiff's Behalf.

Contrary to Plaintiff's arguments in the Opposition, the fact that Defendants did not keep business records of every hotel, motel, apartment, and/or convalescent home they contacted on Plaintiff's behalf, and cannot recall the name, rank, and number of every third party's representative they spoke to three years ago does not establish a failure to accommodate. In *Wong*, 192 F.3d 807, cited by Plaintiff, the missing factual inquiry related to what accommodations were <u>necessary</u> for a student to meet the academic standard in question. *Wong*, 192 F.3d 807 at 818-819. Here, Defendants accepted without further inquiry Plaintiff's assertion that she needed both an ADA-accessible room, her personal hospital bed (in June) and later (in November) a rented bed. Dkt. 68-3 (Dogan Decl.) ¶¶ 9-11; Dkt 68-2 (Weber Decl.) ¶¶ 3, 8-10, 12-13, 16, 19, 22-23, 29, 51, Ex. A; Dkt 68-1 (Younkin Decl.) Ex. F, Weber Depo. Vol. 1 p. 67:11-25; *Id*. ¶ 8, Ex. G, Weber Depo. Vol. 2 p. 249:25-250:13; 252:12-253:3; 253:17-254:4.

Further, the at-issue policies and procedures in *Wong* <u>were entirely within the defendant University's control</u>. Here, of course, Defendants do not have the ability to control the policies and practices of third parties. Weber Decl. ¶ 43. Finally, in *Wong* the University had previously made the exact modification available to other students a fact which, though not dispositive, was "persuasive evidence from which a jury could conclude that the accommodation was reasonable." *Wong*, at 820. Plaintiff proffers no such evidence here. Accordingly, Defendants have established that they reasonably accommodated Plaintiff in both June and November 2019 – no reasonable jury could find otherwise.

### D. Defendants Have Established That It Would Be Both An Undue Administrative Burden And Fundamental Change In Each Defendants' Operations To Force A Third Party To Change Its Policies And Procedures.

By its terms, the FHA refers to a landlord's ***own*** policies and procedures and cannot credibly be read to impose a duty to change the policies, practices, or procedures of a third party. 42 U.S.C. §§ 3602(b) & 3603(b)(2). *U.S. v. California Mobile Home Park Management Co.*, 29 F. 3d 1413, 1416 (1997) (imposition of duty on <u>landlords</u> to reasonably accommodate the needs of disabled residents);

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*Garcia v. Brockway*, 2004 WL 7334542 *9 (D. Idaho, Apr. 22, 2004, No. CV 03-193-S-MHW) (defendants did not exhibit sufficient control over the property to be physically or legally capable of effectuating reasonable accommodation request).

It is axiomatic that a landlord would be both unduly burdened and would fundamentally alter its own business operations if it were responsible for controlling the policies and procedures of third parties or policing how a third party's employees communicate their employer's, *e.g.*, reasonable accommodation policies to the public. Here, MHI is a parent company with no day-to-day involvement in the operations at the Hamilton. Dkt. 62-2 (Rosenblum Decl.) ¶¶ 5, 7-8. MHMG contracts with the Hamilton's owner to provide property management services and MHC assisted with the relocation of residents during the stair lift renovation. Dkt. 68-2 (Weber Decl.) ¶ 4, 26-27; Dkt. 68-3 (Dogan Decl.) ¶¶ 1-3. Defendants do not own, control, manage, operate or otherwise direct any hotels including ESA. Dkt. 68-2 (Weber Decl.) ¶ 43.

Thus, the issue is not – as Plaintiff styles it in the Opposition – whether moving Plaintiff's bed or renting a bed would pose an undue administrative or financial burden. The issue, and the burden, is whether Defendants can reasonably be expected under the FHA and California statutes, to **guarantee** that a hotel will be available that will accept either a rented bed or a tenant's personal bed whenever such a request is made. As the record demonstrates, this is an impossible guarantee to make and an unreasonable bar for landlords to meet.

### E. Plaintiff Has Failed To Present Admissible Evidence That Defendants Intentionally Discriminated Against Her Under The Unruh Act.

Intentional discrimination under the Unruh Act requires proof that the defendant undertook "willful, affirmative misconduct" that harmed the plaintiff. *Koebke v. Bernardo Heights Country Club*, 36 Cal.4th 824, 853 (2005). "Willfulness" means intentional discrimination and not the disparate impact of a facially neutral policy or an alleged failure to grant a reasonable accommodation.[3] *GLADD,*

---

[3] Plaintiff simply recasts her reasonable accommodation analysis to establish an Unruh Act violation. In doing so, Plaintiff essentially argues that Defendants acted with deliberate indifference toward her – a theory of liability that has been expressly rejected by the Ninth Circuit. *GLADD,* 742 F.3d 414 at 426.

For the Unruh Act claim to survive, she must instead establish that Defendants denied her a service (1)

742 F.3d 414 at 426. "Affirmative misconduct" means denying a service to a disabled person that is otherwise available to persons without a disability. *Id.* at 427 (discussing *Hankins v. El Torito Restaurants, Inc*. 63 Cal.App. 4th 510 (1998)). In *GLADD*, the Ninth Circuit found that the hearing-impaired plaintiff "failed to establish the intentional discrimination needed to sustain an Unruh Act claim" because "CNN did not offer closed captioning on any news video displayed on CNN.com. As such, its policy of displaying online video programming without closed captioning applied equally to all CNN.com visitors, hearing impaired or not." *Id*. at 426. "Such conduct [did] not demonstrate CNN's 'willful, affirmative misconduct' or intentional discrimination" sufficient to form the basis of an Unruh Act violation. *Id*.

As in *GLADD*, Plaintiff cannot establish that MHMG denied her a service (moving or renting personal furniture) that was available to tenants who were *not* physically disabled but affirmatively denied that service to her. Dkt. 68-1 (Younkin Decl). Ex. C, Skochko Depo. Vol. 1 p. 69:17-70:12; 90:4-7); *Id*. Ex. J, Plaintiff's RFA Responses Nos. 9-10, 12, 14. The Hamilton is an independent living facility. Tenants are responsible for moving their personal belongings, including furniture onto the premises. Dkt. 73-3 (Weber Decl. ISO Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment) ¶ 30. This policy applies to all tenants equally. Thus, MHMG did not willfully and affirmative deny Plaintiff a service that is otherwise available to Hamilton residents. *GLADD*,

---

*available to others* (2) *because of her disability*. Dkt. 71 at p. 19:20 – 22:10. Plaintiff's reliance on the Order granting Defendants' Motion to Dismiss in her prior lawsuit titled *Glasby v. Mercy Housing, Inc*., No. 17-CV-02153-DMR, 2017 WL 4808634 at *6 (N.D. Cal. Oct. 25, 2017) and on *Earll v. eBay, Inc*. No. 5:11-CV-00262-JF HRL, 2011 WL 3955485 at *4 (N.D. Cal. Sept. 7, 2011) is misplaced – the cases are easily distinguishable.

In *Earll*, the Court dismissed plaintiff's Unruh Act claim for intentional discrimination where plaintiff alleged that eBay's seller verification system ***was inaccessible to the deaf community, but accessible to those without hearing impairments***. *Earll* at * 1. However, the complaint also alleged that eBay's "live help" system would authenticate plaintiff's identity as a seller. Thus, the seller identification service was not withheld from plaintiff because of her disability. *Id*. at *3.

In *Glasby*, the Court <u>granted</u> Defendants' motion to dismiss plaintiffs' Unruh Act claim premised on alleged "deliberately indifferent conduct," stating that GLADD *expressly rejected* that standard. *Glasby* at *7-8. By relying on her reasonable accommodation claims as evidence of intentional discrimination Plaintiff tries the same tack here that failed before. In this regard, the Ninth Circuit's admonition is clear: "we decline to adopt the deliberate indifference standard in light of the California Supreme Court's statement that a showing of intentional discrimination under the Unruh Act contemplates 'willful, affirmative misconduct.'" *GLADD*, 742 F.3d at 427.

742 F.3d at 426.

Further, the record is clear that MHMG has reasonable accommodation policies and procedures in place at that Hamilton and was willing to *change* its general policy to accommodate Plaintiff's request for the transfer of her personal bed in June 2019. Dkt. 68-2 (Weber Decl.) ¶¶ 16-17, 19, 46-53; Dkt. 68-3 (Dogan Decl.) ¶¶ 4-11; Dkt. 68-1 (Younkin Decl.) Ex. F, Weber Depo. Vol. 1 at p. 67:11-25 & Ex. G, Weber Depo. Vol. 2 at p. 249:25-250:13; 252:12-253:3; 253:17-254:4; *see GLADD*, 742 F.3d 414 at 446 (in response to GLADD's captioning request, CNN offered text-based services and would provide web access required by the FCC's pending caption rules. As a result, "[n]oteably absent from the record is any evidence supporting an inference that CNN intentionally discriminated against hearing impaired individuals on account of their disability."). On these facts, no reasonable jury could find that Defendants willfully and affirmatively discriminated against Plaintiff under the Unruh Act, thus summary judgment for Defendants on this cause of action is necessary and appropriate. *Anderson,* 477 U.S. 242, 248-249.

### F. Plaintiff Has Failed To Present Evidence Of Defendants' Liability For Punitive Damages.

Fair Housing Act. Liability for punitive damages under the Fair Housing Act requires a finding that the defendant acted with "evil motive or intent" or "reckless or callous indifference" to a federally protected right. *Smith v. Wade*, 461 U.S. 30, 56 (1983). "A finding of reckless indifference '***ultimately focuses on the actor's state of mind***,' and requires that the defendant 'at least discriminate in the face of a ***perceived risk*** that its actions will violate federal law.'" *The Fair Housing Council of San Diego, Joann Reed v. Penasquitos Casablanca Owner's Ass'n*, 381 Fed.Appx. 674, 677 (quoting *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 535 (1999)).

For example, in *Fair Housing Council of San Diego*, the defendant (a) failed to respond to sexual harassment claims from multiple residents regarding one of its employees as well as claims that minors witnessed the employee commit sexual assault; (b) received a copy of a temporary restraining order filed against the employee; and (c) knew that the employee was on parole having been previously convicted of rape. The defendant nevertheless continued to employ him for two months during which time the sexual harassment continued. *Id*. at 676. On ***these facts*** the Ninth Circuit held that a

1  reasonable jury could find that the defendant acted with reckless indifference.

2  In *Kolstad*, 527 U.S. 526, the Supreme Court acknowledged that in the employment context:
3  "There will be circumstances where [even] intentional discrimination does not give rise to punitive
4  damages liability under this standard.  In some instances, the employer may simply be unaware of the
5  relevant federal prohibition.  There will be cases, moreover, in which the employer ***discriminates with***
6  ***the distinct belief that its discrimination is lawful***. . . an employer may reasonably believe that its
7  discrimination satisfies [a defense] or other statutory exception to liability." *Kolstad*, 527 U.S. 526 at
8  536-537 (emphasis added).  This is because "the justification of exemplary damages lies in the evil
9  intent of the defendant." *Id*. at 538 (internal quotation omitted).  "Where there is no evidence that gives
10 rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to
11 actual malice, the trial court need not, and indeed should not, submit the issue of punitive damages to
12 the jury." *Id*. at 539 (internal quotation omitted).

13 Here, Defendants' conduct falls well below the barometer of "reckless indifference" set by
14 *Smith*, *Kolstad* and *Fair Housing Council of San Diego*.  Contrary to Plaintiff's assertions, Defendants
15 "state of mind" was to ***provide*** Plaintiff with the reasonable accommodations of her choice.  In this
16 regard the following facts are undisputed: **(a)** Defendants ***intended*** to effectuate both parts of Plaintiff's
17 March 2019 relocation preference and her May 29, 2019 reasonable accommodation request (Dkt. 68-2
18 (Weber Decl.) ¶¶ 16-17, 19, 46-53; Dkt. 68-3 (Dogan Decl.) ¶¶ 4-11; Dkt. 68-1 (Younkin Decl.) Ex. F,
19 Weber Depo. Vol. 1 at p. 67:11-25 & Ex. G. Weber Depo. Vol. 2 at p. 249:25-250:13; 252:12-253:3;
20 253:17-254:4); **(b)** Defendants secured an ADA-accessible hotel room for Plaintiff (Dkt. 68-3 (Dogan
21 Decl.) ¶ 10; Dkt. 68-2 (Weber Decl.) ¶ 46); **(c)** Defendants searched for a location that would allow
22 both Plaintiff's personal hospital bed and was ADA-accessible but could not locate one (Dkt. 68-3
23 (Dogan Decl.) ¶¶ 11 & 14; Dkt. 68-2 (Weber Decl.) ¶¶ 3, 8-10, 12-13, 46 49-51, 54-55; Dkt. 68-1
24 (Younkin Decl.) Ex. F, Weber Depo. Vol. 1 p. 131:21-132:2; 132:8-25; 143:6-16; 145:12-20; 146:5-9;
25 147:1-11) & Ex. G, Weber Depo. Vol. 2 p. 255:5-9); **(d)** as it stood in June 2019, Defendants ***believed***
26 that they could effectuate either Plaintiff's request for an ADA-accessible hotel room or her request for
27 her hospital bed, but not both (Dkt. 68-2 (Weber Decl.) ¶¶ 3, 8-10, 12-13, 50-55, Exhs. J-K; Dkt. 68-1
28 (Younkin Decl.) Ex. F, Weber Depo. Vol.1 p. 162:2-15; 183:4-184:7); and **(e)** as a result, Defendants

1  offered Plaintiff the choice of three alternative accommodations including reimbursement for medical
2  devices if she chose to go to ESA without her bed. Dkt. 68-1 (Younkin Decl.) Exs. I-J, Plaintiff's
3  responses to RFA Nos. 20-21, 24-25; Dkt. 68-2 (Weber Decl.) ¶¶ 3, 8-10, 12-13, 57, Ex. L.

4  Plaintiff elected to go to ESA without her personal bed, did not submit receipts for medical
5  devices and did not reiterate her request for a personal bed – or any other hospital bed – to Defendants
6  or to ESA staff. In fact, Plaintiff did not communicate further with Defendants, so they had no way of
7  knowing that Plaintiff had increased her pain medication. Dkt. 68-1 (Younkin Decl.) Ex. C, Skochko
8  Depo. Vol. 1 p. 64:17-65:3; 67:6-10); *Id*. at Ex. D. Skochko Depo. Vol. 2 p. 219:18-22; 224:25-225:3;
9  230:21-231:16; *Id*. at Ex. H, Saldana Depo. p. 70:8-72:10; 72:15-73:14; 73:15-22; 74:9-25; 75:1-11;
10 77:17-24; *Id*. at Exs. I-J, Plaintiff's responses to RFA Nos. 24-25; Dkt. 68-2 (Weber Decl.) ¶ 3, 8-10,
11 12-13, 58-59, 61-64, Ex. M; Dkt. 68-3 (Dogan Decl.) ¶ 16.

12 Accordingly, in November 2019, Defendants attempted to reserve an ADA-accessible hotel
13 room for Plaintiff ***based on her selection*** of that option during the prior relocation. Dkt. 68-2 (Weber
14 Decl.) ¶¶ 8-10, 12-13, 67-68, 72. When Plaintiff asked Ms. Escobedo if Plaintiff could bring a hospital
15 bed with her, Ms. Escobedo said she would try. Dkt. 68-1 (Younkin Decl.) Ex. D. Skochko Depo.
16 Vol 2 p. 240:17-241:11; 241:17-24. Plaintiff has put forth no evidence that she complained to anyone
17 at Mercy Housing or ESA about not having a hospital bed either while she was at the hotel or upon her
18 return to the Hamilton days later. Dkt. 68-1 (Younkin Decl.) Ex. D, Skochko Depo. Vol. 2 p. 232:3-22;
19 232:23-233:1; 233:2-10; 251:16-252:9; 252:11-16; 252:22-253:6 & 253:11-13).

20 Rather, on Sunday, November 10, 2019 (five days after Plaintiff was relocated), Plaintiff's
21 attorney emailed defense counsel stating that ESA would accept a rented hospital bed and requested that
22 counsel discuss next steps on Veterans Day. Dkt. 68-1 (Younkin Decl.) ¶ 21, Dkt. 68-2 (Weber Decl.)
23 ¶¶ 68-75, 79. Because MHMG's offices (including the 504 coordinator) were closed for the holiday,
24 and because Plaintiff knew the make and model of the bed she wanted, defense counsel suggested that
25 Plaintiff arrange for the bed to be delivered with reimbursement costs to be approved by MHMG during
26 business hours. On November 12, 2019, MHMG approved reimbursement up to $1,500 for the
27 immediate rental of a hospital bed or other medical device. Dkt. 68-2 (Weber Decl.) ¶¶ 80-83.

28 Focusing on Defendants' state of mind, no reasonable jury could conclude that Defendants acted

with "evil motive or intent" or "reckless or callous indifference" toward Plaintiff's rights. *Smith*, 461 U.S. 30 at 56. Further, it is clear from the record that Defendants at all timed believed that their actions complied with federal and state reasonable accommodation laws. *Kolstad*, 527 U.S. 526 at 536-537. Accordingly, summary judgment is appropriate the Court "should not, submit the issue of punitive damages to the jury." *Id*. at 539 (internal quotation omitted).

<u>Fair Employment and Housing Act</u>. As set forth in Defendants' moving papers, a finding of "malice, fraud or oppression," must be present before a corporation can be punished for the acts of its employees. Cal. Civ. Code § 3294. While the focus of the California courts is on whether the defendants' conduct was despicable, the facts presented above in connection with punitive damages under the FHA do not, as a matter of law, rise to the level of base, vile or contemptable conduct necessary for the imposition of punitive damages under FEHA. *College Hosp. Inc. v. Superior Court*, 8 Cal. 4th 704, 725 (1994). Because Plaintiff has not identified any facts to impute the requisite malice or oppression to Defendants – let alone by clear and convincing evidence – summary judgment on this issue is appropriate.

### III.   CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court grant the Motion for Summary Judgment. Should material issues of fact exist as to some, but not all the claims and/or causes of action raised by the Complaint, Defendants request that the Court grant partial summary judgment as to those claims and/or causes of action that do not require presentation to a jury to resolve.

Dated: July 21, 2022                                      SABER LAW GROUP

By: */s/ Michelle Younkin*
    SHIRLEY WANG
    MICHELLE YOUNKIN
    CHRISTINA FORST
    Attorneys for Defendants
    MERCY HOUSING, INC., MERCY HOUSING CALIFORNIA and MERCY HOUSING MANAGEMENT GROUP, INC.