1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SYDNEY SKOCHKO,

                    Plaintiff,

          v.

MERCY HOUSING, INC., et al.,

                    Defendants.

Case No.  20-cv-08659-JSC

**ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 66, 67, 68

        Plaintiff sues three Defendants for failure to reasonably accommodate her disabilities.  The lawsuit arises out of Defendants' failure to provide her with a hospital bed when she was required to temporarily relocate from her apartment because of repairs to the building's wheelchair-accessible lift.  Before the Court are Defendant Mercy Housing, Inc.'s motion for summary judgment; Plaintiff's motion for partial summary judgment; and all Defendants' motion for summary judgment or, in the alternative, partial summary judgment.  (Dkt. Nos. 66, 67, 68.) Having carefully considered the parties' briefing, and having had the benefit of oral argument on August 11, 2022, the Court GRANTS Defendant Mercy Housing, Inc.'s motion for summary judgment; GRANTS Plaintiff's motion for partial summary judgment (with respect to the remaining two Defendants); and DENIES Defendants' motion for summary judgment.

**FACTUAL BACKGROUND**

        Plaintiff lives at the Hamilton Apartments in Oakland, California.  (Dkt. No. 68-1 at 53.) [1] The Hamilton has seven floors, with 92 apartments across floors two through seven.  (Dkt. No. 68-2 at 6 ¶ 25.)  Plaintiff has physical disabilities that make it very painful for her to move or walk.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

(Dkt. No. 67-1 at 15.)  She needs a hospital bed to sleep or rest, because she can only comfortably lie down when the bottom of the bed is up and the top is down.  (*Id.*)  If Plaintiff cannot lie down in that position, she has excruciating pain and cannot sleep.  (*Id.* at 15–18.)  Plaintiff has had the same hospital bed for the 15 years she has lived in her apartment.  (*Id.* at 14, 19; Dkt. No. 68-1 at 71, 346–47.)

### A.    June 2019 Relocation

Seven stairs lead from the outside sidewalk into the Hamilton lobby.  (Dkt. No. 68-2 at 6 ¶ 25.)  There is also a wheelchair-accessible lift.  (*Id.*)  In June 2019, the lift was removed and replaced over a period of 8 weeks.  (*Id.* at 8 ¶ 37.)  Defendant Mercy Housing California's Relocation Coordinators Nakema Dogan and Tia Ramirez[2] were responsible for relocating residents during the project; ultimately, 10 residents were relocated.  (Dkt. No. 67-1 at 44, 94; Dkt. No. 68-1 at 223–24, 228–29, 232–35; Dkt. No. 68-2 at 8 ¶¶ 38–39; Dkt. No. 68-3 at 2 ¶ 1.)  In March 2019, there was a community meeting to tell residents about the project and explain that they could be relocated if they wished.  (Dkt. No. 68-1 at 230–31, 237; Dkt. No. 68-2 at 9 ¶ 40.)  On March 18, Ms. Dogan sent Plaintiff a notice about the project and potential relocation, and they met in person soon after.  (Dkt. No. 68-1 at 97, 236; Dkt. No. 68-2 at 9 ¶¶ 41, 44.)

There is conflicting evidence as to what was said in conversation between March and June 2019, but written communications show the following.  Around May 29, 2019, Plaintiff submitted a form titled "Request for Reasonable Accommodation/Reasonable Modification" on Mercy Housing letterhead.  (Dkt. No. 67-1 at 7–8.)[3]

> Please describe the situation you are encountering that causes you to request accommodation or modification:

---

[2] The briefs and record spell these employees' names as both Nakema Dogan and Nakeema Dogan, and Tia Ramirez and Tia Rameriz.  The Court uses the former of each, following Ms. Dogan's declaration.  (Dkt. No. 68-3 at 2.)

[3] Defendants' objections to this document are overruled. Defendants rely on it in their opposition to Plaintiff's summary judgment motion.  (Dkt. No. 73 at 12–13; Dkt. No. 73-2 at 47.)  *See Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001) (on summary judgment the trial court must consider all evidence in the record, regardless of who offered it).  The document is not hearsay to the extent it is used to reflect what Plaintiff communicated to Defendants, as it is here.

1. Must sleep in special position due to stenosis of spinal nerves and metasizes [sic] of cancer to sacrum.

Please describe the accommodation or modification you are requesting:

1. Requesting disabled room (ADA[4] compliant) room while on relocation during re-construction of lift.
2. Transport of medical bed to relocation destination (hotel) and transported back home to [Apt.] 710.

(*Id.* at 7.)  A property manager completed a part of the form titled "use when disability is known or obvious and no 3rd-party verification is necessary."  (*Id.* at 8.)  The property manager wrote that Plaintiff had "limited mobility," described her current status as "severe limited," noted that there was "prior accommodation in tenant file," and recommended the request be "grant[ed] based on obvious need for accommodation."  (*Id.*)  On May 30, a property manager forwarded Plaintiff's request to Ms. Dogan, Ms. Ramirez, and others.  (Dkt. No. 68-2 at 50.)[5]

On June 8, Plaintiff emailed Ms. Dogan, Ms. Ramirez, and others referencing "months" of verbal requests, and some written requests, for "a disabled room and a hospital bed."  (Dkt. No. 67-1 at 114.)[6]

On June 17, Plaintiff's counsel emailed Defendants' counsel:

I understand that Mercy does not dispute that a hospital bed is a necessary accommodation for [Plaintiff] out of her home.  I understand that [Ms. Ramirez] and the relocation people have not been successful in getting a hotel's consent to have a hospital bed moved in for [Plaintiff].

I urged you to escalate the issue to hotel management, who must as a matter of law grant this reasonable accommodation.  For your information, [Plaintiff] spoke on the phone with a manager at the Extended Stay Oakland Airport who said he did not think having a hospital bed would be a problem.  If [Plaintiff] were to be located there or any similar remote location, Mercy would need to pay for Uber/Lyft/taxis but I think that's a problem easily solved, once the bed issue is resolved.

It also occurred to me that the hotels may be objecting to bringing someone's personal bed into the hotel for (misplaced) hygiene reasons and so would respond better if Mercy were renting a hospital bed to be delivered directly to the hotel from a vendor.

---

[4] ADA refers to the Americans with Disabilities Act.
[5] Defendants' objections to this document are overruled.  *See supra* n.3.
[6] Defendants' objections to this document are overruled.  *See supra* n.3.

3

1    (*Id.* at 117.)  Defendants' counsel replied on June 19:

2            Mercy contracted with Extended Stay America for ADA-compliant
             rooms during the lift replacement.  [Plaintiff's] room there has been
3            pre-paid and remains available to her.  While we are sympathetic to
             [Plaintiff's] situation, I did not, as your e-mail suggests, ever say or
4            imply during our Monday telephone call that "Mercy does not dispute
             that a hospital bed is a necessary accommodation for [Plaintiff] out of
5            her home."

6            On  June  4,  2019,  Mercy  received  [Plaintiff's]  Reasonable
             Accommodation Request to take her personal hospital bed with her to
7            the relocation facility.  Although not part of Mercy's obligation to
             provide accessible housing to [Plaintiff], Mercy's Relocation Team
8            has contacted numerous ADA-compliant hotels and extended stay
             facilities in an attempt to find one that would permit [Plaintiff] to
9            bring her personal hospital bed.  Unfortunately, despite these efforts,
             Mercy has been unable to locate a hotel or an extended stay facility
10           that would agree to allow [Plaintiff] to bring in her personal hospital
             bed.   Your suggestion that Mercy or its attorneys threaten these
11           businesses with lawsuits unless they allow your client to bring in her
             personal hospital bed is administratively unreasonable.  Mercy does
12           not—and cannot reasonably be expected to—control the business
             practices of third parties.
13

14   (*Id.* at 119.)  Defendants' counsel offered three options.  First, Plaintiff could stay at home during

15   the lift repair and Defendants would provide an "on-call runner" for errands like groceries and

16   prescriptions.  (*Id.* at 120.)  Second, Plaintiff could relocate to the Extended Stay America

17   ("ESA") Oakland-Emeryville to an ADA-compliant room without a hospital bed:

18           It remains unclear what functionality/aspect(s) of the hospital bed
             [Plaintiff] relies upon for pain relief and to what degree medical
19           support cushions and/or other products, devices, equipment can be
             used  on  the  Extended  Stay  America  bed  to  provide  similar
20           functionality.  To the extent such products are useful to [Plaintiff], if
             she chooses to relocate to the Extended Stay facility, Mercy is open
21           to reimbursing [her] for reasonable purchases to help make the bed
             provided more like her hospital bed.
22

23   (*Id.*)  Third, Plaintiff could relocate to a hotel with a non-ADA-compliant room and "bring a

24   hospital bed"; she "would need to relocate after 29 days to avoid establishing tenancy and will be

25   responsible for making the arrangements to move her bed into and out of the hotel."  (*Id.*)

26   Plaintiff's counsel responded that "at least temporarily," Plaintiff wished to relocate to the ESA

27   Oakland-Emeryville.  (Dkt. No. 68-2 at 60–61.)

28           Plaintiff relocated on June 19.  (*Id.* at 9 ¶ 42, 12 ¶ 59.)  On June 20, Plaintiff's counsel

United States District Court
Northern District of California

emailed Defendants' counsel about "two outstanding issues":

> 1. Defendant has not offered any reasonable alternatives to [Plaintiff's] reasonable accommodation request for a hospital bed in her hotel room while the wheelchair lift is out of service. Defendant has made vague suggestions, but nothing with sufficient detail to enable [Plaintiff] to make an informed decision.
>
> 2. Defendant moved [Plaintiff] to a hotel room that is not accessible to her. Far in advance of yesterday, [Plaintiff] presented both Tia (or her assistant) and Hamilton's property manager with a written list of the accessible features she needs in a hotel room, written by her doctor. She was not provided with those features. Thus, in addition to the pain she suffers from having no adjustable bed, she has no way to bathe because she can't step into the bathtub she was assigned. (there are other access barriers but these are the most pressing.)

(Dkt. No. 72-7 at 2–3.)

Plaintiff stayed for 66 days at ESA Oakland-Emeryville without a hospital bed, (Dkt. No. 67-1 at 108), and had excruciating pain, (*id.* at 26–28).

**B.     November 2019 Relocation**

In November 2019, Defendants made repairs to the wheelchair-accessible lift in the Hamilton lobby. (Dkt. No. 68-2 at 12 ¶ 65.) Defendants chose ESA Oakland-Emeryville to relocate residents and reserved an ADA-compliant room for Plaintiff. (*Id.* at 13 ¶¶ 67–68.) Xochitl Escobedo was the Relocation Coordinator. (Dkt. No. 67-1 at 71; Dkt. No. 68-2 at 14 ¶ 77.)

Plaintiff relocated to ESA Oakland-Emeryville on November 5, 2019, but was not given an ADA-compliant room. (Dkt. No. 68-2 at 14 ¶¶ 75–76.) That same day Plaintiff's counsel emailed Ms. Escobedo:

> Prior to being relocated, [Plaintiff] requested that because of her disabilities, she be placed in an ADA accessible hotel room with access to a hospital bed to remain safe while she was away from her unit. Despite this request, she has been placed in a non-ADA accessible room . . . . She also was not permitted to bring her hospital bed.
>
> As an accommodation, please relocate [Plaintiff] *forthwith* to a hotel with an accessible room. Time is essential and we trust that this relocation can take place no later than tomorrow morning. Further, upon relocation, we intend to request a reasonable accommodation of the hotel to permit [Plaintiff] a hospital bed for the duration of her stay. This request requires that Mercy Housing be prepared to order

United States District Court
Northern District of California

5

1    and have a hospital bed delivered to [Plaintiff] at the hotel when the
     request is granted.

2    (*Id.* at 67.)  Ms. Escobedo emailed Ms. Ramirez and reported that she had called Plaintiff, who

3    said she would wait until an ADA-compliant room opened up at ESA Oakland-Emeryville rather

4    than moving to another hotel.  (*Id.*; *see id.* at 14 ¶ 77.)

5           On November 6, Defendants' counsel emailed Plaintiff's counsel offering that Plaintiff

6    could relocate that same day to an ADA-compliant room at the La Quinta by Wyndham near the

7    Oakland Airport, if she preferred not to wait for an ADA-compliant room at ESA Oakland-

8    Emeryville.  (*Id.* at 71.)  They continued:

9           Your request that Mercy be prepared to have Ms. Skochko's hospital
            bed transferred to a hotel as a reasonable accommodation is simply
10          not feasible.  Other residents who use hospital beds at the Hamilton
            have moved to the Extended Stay facility without their beds,
11          understanding that this is a temporary situation.  We expect all
            relocated residents will be able to return to the Hamilton in 3 days.

12

13   (*Id.*)

14          On November 10, Plaintiff's counsel emailed Defendants' counsel:

15          Since last we communicated, Ms. Skochko has been relocated to two
            different hotels.  Despite asking for an assurance that the third
16          relocation would be to a hotel with a wheel-in shower, and sending a
            photo of one to Hamilton's relocation coordinator, she arrived and no
17          such room was available.  Nor was there any note on her reservation
            that this room had been requested.  Further, no early check in had
18          been arranged, so she had to wait in the lobby for nearly three hours.
            She was finally permitted access to her room only to see that it had an
19          inaccessible shower.

20          I spoke to the hotel today and thankfully, they were able to move her
            to an accessible room with a wheel-in shower.  In addition, they stated
21          that it would be no problem for Ms. Skochko to bring in her medical
            bed as an accommodation of her disability.  They stated only that they
22          cannot help with moving it and that it must be removed upon check
            out or would incur the daily guest rate.
23
            Ms. Skochko has been patient throughout this process. But Mercy has
24          been on notice that she was in need of a hospital bed to accommodate
            her disability for a significant period of time. . . .  At this point we are
25          asking for a formal reasonable accommodation for Mercy to rent such
            a medical bed immediately and have it delivered to Ms. Skochko's
26          room at the Extended Stay in Alameda.

27   (*Id.* at 69.)

28          On November 11, Defendants' counsel responded that Defendants' offices were closed for

United States District Court
Northern District of California

Veterans Day but that they would consider the request "that Mercy Housing rent a hospital bed for Ms. Skochko at the Extended Stay in Alameda." (*Id.* at 73.)

> In the interim, Ms. Skochko can arrange for a rental bed to be brought to the Extended Stay in Alameda at her own expense, but I cannot represent that Mercy will be able to reimburse her for that cost unless and until her request has been evaluated by the 504/[Reasonable Accommodation Request] coordinator.

(*Id.*) The next day, Defendants' counsel offered to have Plaintiff reimbursed "up to $1,500 for the rental or purchase of medical devices" while at ESA. (*Id.*) Plaintiff's counsel responded that Plaintiff could not afford to pay for any part of an accommodation due to her low income. (Dkt. No. 67-1 at 129.)

Plaintiff spent a total of 15 days at ESA Oakland-Emeryville and ESA Alameda, (*id.* at 98), without a hospital bed, (Dkt. No. 68-1 at 154).

### C.    March 2021 Relocation

There was a planned elevator outage at the Hamilton between March 29 and 30, 2021. (*Id.* at 151.) On March 25, Plaintiff's counsel requested as a reasonable accommodation that Plaintiff be relocated to an ADA-compliant hotel room with a hospital bed, "either rented or transported from her apartment." (*Id.* at 133–35.) Defendants reserved an ADA-compliant room at ESA Oakland-Emeryville but "reasserted [their] understanding that [ESA] did not permit guests to bring in outside beds." (*Id.* at 151.) On March 28, Plaintiff checked into the hotel. (*See id.* at 140.) The same day, Plaintiff's counsel forwarded an email from ESA Oakland-Emeryville confirming that it would allow a hospital bed. (*Id.* at 137–40.) Defendants rented a hospital bed from Allstar Medical Supply, which was delivered to Plaintiff at ESA Oakland-Emeryville on March 29. (*Id.* at 142, 152.)

* * *

Plaintiff sues Mercy Housing, Inc. ("Mercy Housing"), Mercy Housing California ("Mercy California"), and Mercy Housing Management Group, Inc. ("Mercy Management Group"), bringing claims under the federal Fair Housing Act ("FHA"), California's Fair Employment and Housing Act ("FEHA"), California's Disabled Persons Act ("DPA"), and California's Unruh Act. (Dkt. No. 1 ¶¶ 42–74.) She moves for partial summary judgment on the FHA, FEHA, and DPA

United States District Court
Northern District of California

1   claims.  (Dkt. No. 67.)

2          Defendant Mercy Housing moves for summary judgment on the grounds that it is not the

3   owner or manager of Plaintiff's home and is an improper defendant.  (Dkt. No. 66.)  All

4   Defendants move for summary judgment or, in the alternative, partial summary judgment on the

5   grounds that they provided reasonable accommodations in response to Plaintiff's requests for the

6   June and November 2019 relocations, albeit not Plaintiff's requested accommodation of a hospital

7   bed.  (Dkt. No. 68.)  Mercy Housing joins that motion to the extent its own motion is denied.  (*Id.*

8   at 5 n.1.)

9                                  **DISCUSSION**

10  **I.     MERCY HOUSING'S SUMMARY JUDGMENT MOTION**

11         For purposes of summary judgment, Mercy California and Mercy Management Group do

12  not dispute that they operate the Hamilton and thus may be liable for a failure to accommodate

13  Plaintiff's disabilities.  The evidence is insufficient to support a finding that Mercy Housing *also*

14  operates the Hamilton and thus may be liable.  The undisputed evidence establishes that Mercy

15  Housing is a separate corporate entity from the other two Defendants and "has no involvement in,

16  and no control over day-to-day operations" at the Hamilton.  (Dkt. No. 66-2 at ¶¶ 4, 8; Dkt. No.

17  66-1 at 14–17.)

18         The sole owner of the building is 2101 Telegraph Avenue Associates, LP.  (Dkt. No. 66-2

19  ¶ 5.)  The uncontroverted evidence is that the owner contracts with Mercy Management Group to

20  manage the building; Plaintiff has not identified evidence that Mercy Housing is part of that

21  contract or has its own contract to manage the building.  (*Id.* ¶¶ 5, 7; Dkt. No. 68-2 at 6 ¶¶ 26–27.)

22  At best, the record supports a finding that Mercy Housing has a controlling interest in the separate

23  corporate entities of Mercy Management Group, Mercy California, and 2101 Telegraph.  (Dkt. No.

24  70-1 at 14–15, 22.)  Plaintiff does not cite any case, and the Court is aware of none, that suggests a

25  separate corporate entity's controlling ownership in an entity that owns or operates a facility

26  makes the separate corporate entity liable for its subsidiary's failure to accommodate.  *See Ranza*

27  *v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) ("As a general principle, corporate separateness

28  insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's

United States District Court
Northern District of California

United States District Court
Northern District of California

1   ownership of the subsidiary.").  Plaintiff's reliance on Mercy Housing's description of Mercy

2   California as a "regional division" of Mercy Housing is misplaced.  This unexplained description,

3   without more, is insufficient to create a genuine dispute as to Mercy Housing's separate corporate

4   existence from Mercy California.

5          Accordingly, Mercy Housing's motion for summary judgment is GRANTED.[7]  The rest of

6   the Court's analysis pertains only to Defendants Mercy Management Group and Mercy California.

7   **II.      PLAINTIFF'S SUMMARY JUDGMENT MOTION**

8          Plaintiff's FHA, FEHA, and DPA claims assert that Defendants failed to reasonably

9   accommodate her disabilities.[8]  (Dkt. No. 1 ¶¶ 42–57, 66–74.)  The parties agree that failure to

10  accommodate claims under the three statutes have substantially similar elements.[9]  *See Pac.*

11  *Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1156 n.14 (9th Cir. 2013); *Smith v.*

12  *Powdrill*, No. CV 12–06388 DDP (RZx), 2013 WL 5786586, at *10–11 (C.D. Cal. Oct. 28, 2013).

13         The FHA, FEHA, and DPA prohibit discrimination in housing on the basis of disability,

14  which includes "a refusal to make reasonable accommodations in rules, policies, practices, or

15  services, when such accommodations may be necessary to afford such person equal opportunity to

16  use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); *see* Cal. Civ. Code § 54.1(b)(3)(B); Cal.

17  Gov't Code §§ 12927(c)(1), 12955(a).  To prevail on these claims, a plaintiff must establish that

18  (1) she has a disability as defined by the statute; (2) defendants knew or reasonably should have

19  known of her disability; (3) accommodation may be necessary to afford her an equal opportunity

20  to use and enjoy the dwelling; and (4) defendants refused to make such accommodation.  *Giebeler*

21  *v. M & B Assocs.*, 343 F.3d 1143, 1147 (9th Cir. 2003) (FHA); *Auburn Woods I Homeowners*

22  *Ass'n v. Fair Emp't & Hous. Comm'n*, 18 Cal. Rptr. 3d 669, 679 (Cal. Ct. App. 2004) (FEHA);

23

24  [7] Defendant Mercy Housing's objections to Plaintiff's evidence are DENIED as moot.
    [8] The complaint alleges Defendants also failed to engage in the interactive process and
25  discriminated in the provision of services and amenities.  (Dkt. No. 1 ¶¶ 46, 55.)  Plaintiff's
    briefing and oral argument clarify that her theory under the FHA is failure to accommodate.  (Dkt.
26  No. 71 at 9.)  As such, Defendants' arguments about discriminatory intent or animus are
    irrelevant.  (Dkt. No. 68 at 18–20.)  Unlike a disparate treatment claim, a failure to accommodate
27  claim has no intent requirement.  *See Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1147 (9th Cir.
    2003) (failure to accommodate elements).
28  [9] (Dkt. No. 67 at 18–19; Dkt. No. 68 at 24–25.)

1    *Smith*, 2013 WL 5786586, at \*10 (DPA).  Implicit in the latter element is that the particular

2    accommodation was requested.  *See Elliott v. QF Circa 37, LLC*, No. 16-cv-0288-BAS-AGS,

3    2018 WL 2933467, at \*7 (S.D. Cal. June 12, 2018) ("An *actual request* by the plaintiff is thus a

4    necessary element of a *prima facie* reasonable accommodation under the FHA.").

5           Finally, the requested accommodation must be reasonable.  *See Dubois v. Ass'n of*

6    *Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006); *Giebeler*, 343 F.3d at

7    1148 ("[O]nly 'reasonable' accommodations are required by the [FHA].").  "[A]n accommodation

8    is reasonable under the [FHA] when it imposes no fundamental alteration in the nature of the

9    program or undue financial or administrative burdens." *Giebeler*, 343 F.3d at 1157 (cleaned up).

10   "[T]he history of the [FHA] clearly establishes that Congress anticipated that landlords would

11   have to shoulder certain costs involved, so long as they are not unduly burdensome." *United*

12   *States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416 (9th Cir. 1994).  "The reasonable

13   accommodation inquiry is highly fact-specific, requiring case-by-case determination." *Id.* at 1418.

14          The plaintiff has the burden "of demonstrating that the particular accommodation [she]

15   requests . . . is reasonable on its face, *i.e.*, ordinarily or in the run of cases." *Giebeler*, 343 F.3d at

16   1157 (cleaned up).  The Ninth Circuit has also formulated the burden as one of evidentiary

17   production: the plaintiff bears the initial burden of producing evidence that a reasonable

18   accommodation is possible. *Id.* (citing *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002));

19   *see also Castellano v. Access Premier Realty, Inc.*, 181 F. Supp. 3d 798, 807 (E.D. Cal. 2016)

20   (noting that *Giebeler* did not definitively adopt the burden of proof framework of either *Vinson* or

21   *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002)).  If the plaintiff meets her burden, then the

22   defendant has the burden "of demonstrating that in the particular circumstances of this case the

23   requested accommodation would cause it to suffer undue hardship" or of rebutting the plaintiff's

24   showing "that the requested accommodation was in fact reasonable."[10]  *Giebeler*, 343 F.3d at

25   1158.

26

27   _____

     [10] The Court need not address Plaintiff's argument that Defendants have a higher burden under
28   FEHA, (Dkt. No. 67 at 21), because as explained below Defendants have not met their burden
     under the FHA.  *See* Cal. Code Regs. tit. 2, § 12179(b)(2).

*United States District Court*
*Northern District of California*

1      As the party that bears the ultimate burden at trial, to prevail on her summary judgment

2   motion Plaintiff "must affirmatively demonstrate that no reasonable trier of fact would find other

3   than for her, such that every element of her claims must be resolved in her favor as a matter of law

4   based on undisputed evidence." *Terraza v. Safeway Inc.*, No. 16-CV-03994-JST, 2019 WL

5   12872959, at *3 (N.D. Cal. Mar. 27, 2019) (cleaned up).

6           **A.      Uncontested Elements**

7      Plaintiff has established as a matter of undisputed fact that she (1) had a disability (2)

8   known to Defendants and that (4) no hospital bed of any kind was provided as an accommodation.

9   *See Giebeler*, 343 F.3d at 1147.  Every reasonable trier of fact would be compelled to find those

10  three elements met.  (*See* Dkt. No. 67-1 at 8, 11, 15–18; *see* Dkt. No. 68 at 8 n.2.)  Indeed,

11  Defendants do not contend otherwise.

12          **B.      Necessary Accommodation Element**

13     Plaintiff has also established as an undisputed fact that a hospital bed may have been

14  necessary to afford her an equal opportunity to use and enjoy the dwelling.  *See Giebeler*, 343

15  F.3d at 1147.  At the time Plaintiff made her request for a hospital bed, Defendants' property

16  manager completed the part of the form that applies when "the disability is known or clear or

17  obvious and the connection to the request is also obvious." (Dkt. No. 67-1 at 8, 38–39.)  The

18  property manager concluded that Plaintiff had an "obvious need" for the hospital bed.  (*Id.* at 8.)

19  Further, Plaintiff testified to her disabilities and why she required a hospital bed, (*id.* at 15–16,

20  18), that her physician prescribed her the hospital bed beginning in 2006, (*id.* at 19, 22), and that

21  without the hospital bed she suffered excruciating pain, (*id.* at 26–28).

22     Defendants do not offer any evidence that suggests Plaintiff does not suffer severe pain

23  when sleeping without a hospital bed.  Instead, they contend there is a genuine dispute as to

24  whether the hospital bed was needed because the day after the June 19, 2019 relocation, Ms.

25  Dogan called Plaintiff "to see how she was settling in and to ask if she needed anything else from

26  me.  Ms. Skochko told me that she was 'fine,' and I took her at her word." (Dkt. No. 68-3 ¶¶ 16–

27  17.)  Plaintiff's response of "fine" to a generic question of how she was settling in does not

28  reasonably support an inference that she does not suffer severe pain without a hospital bed.  Ms.

United States District Court
Northern District of California

1   Dogan did not ask if Plaintiff suffered pain without the hospital bed, or even if she was alright

2   staying at the hotel without a hospital bed.  Further, that very same day Plaintiff's counsel

3   reiterated to Defendants' counsel that Plaintiff needed a hospital bed.  (Dkt. No. 72-7 at 2–3.)

4        Defendants also argue that because Plaintiff chose to relocate without the hospital bed, and

5   thereafter did not inquire of the hotel or Defendants whether she could get a hospital bed, there is a

6   genuine dispute whether she needed a hospital bed.  Again, not so.  Defendants do not identify any

7   evidence which reasonably disputes that Plaintiff suffered pain and had difficulty sleeping without

8   a hospital bed.  Further, that she chose to relocate does not support an inference that she did not

9   need a hospital bed.  As Plaintiff's counsel wrote to Defendants' counsel the day following the

10  relocation:

11           Yesterday afternoon Ms. Skochko was informed that the lift was
             going out of service at 9:00 a.m. today.  She was required to choose
12           on just a few hours' notice whether to stay in her unit with no ready
             access to the outside, or to move to a hotel with no hospital bed.
13           Based on the limited information given, she chose not to be trapped
             in her apartment.  She moved to the hotel room chosen for her by
14           Mercy.

15  (*Id.* at 2.)  No reasonable trier of fact could find that Plaintiff did not need a hospital bed merely

16  because having been put to the Hobson's choice of being stuck in her apartment while the lift was

17  down for months or moving to a hotel room without a hospital bed, she chose to move.

18       Finally, Defendants also claim that after June 20, 2019, neither Plaintiff nor her attorneys

19  communicated with Defendants or the hotel regarding her hospital bed request and that this

20  somehow supports an inference that she did not need a hospital bed.  Again, not so.  Defendants

21  cite no case that requires a person with disabilities to continuously request an accommodation

22  once it is denied.  Drawing all reasonable inferences in Defendants' favor, Plaintiff requested a

23  hospital bed at least five times through June 20, 2019.  (Dkt. No. 68-3 ¶¶ 7–9 (March); Dkt. No.

24  67-1 at 7–8 (May 29), 114 (June 8), 117 (June 17); Dkt. No. 72-7 at 2–3 (June 20).)

25       **C.**     **Requested Accommodation and Reasonableness Elements**

26            **1.**     **June 2019 Relocation**

27                 **a.**     **Requested Accommodation**

28       It is undisputed that beginning as early as March 2019, Plaintiff asked Defendants to

United States District Court
Northern District of California

12

1    relocate her personal hospital bed with her.  (Dkt. No. 68-3 ¶¶ 9–12.)

2         The record also compels the finding that Plaintiff, through counsel, requested the

3    alternative of a rented hospital bed on June 17, 2019 at the latest.  (Dkt. No. 67-1 at 117 ("[T]he

4    hotels may be objecting to bringing someone's personal bed . . . so would respond better if Mercy

5    were renting a hospital bed to be delivered directly to the hotel from a vendor.").)[11]  Defendants

6    offer no evidence that creates a genuine dispute as to this June 17, 2019 email request.

7         Accordingly, every reasonable trier of fact would be compelled to find that Plaintiff

8    requested the accommodations of her personal hospital bed as of May 29 (21 days before the

9    66-day relocation) and a rented hospital bed as of June 17, 2019 (two days before).

10                   **b.       Plaintiff's Reasonableness Burden**

11        To satisfy her burden on the reasonableness element, Plaintiff must present *evidence*

12   showing that the requested accommodation was reasonable and possible and/or establish that it

13   was reasonable on its face, ordinarily or in the run of cases.  *See Giebeler*, 343 F.3d at 1157.  For

14   purposes of her motion for partial summary judgment, Plaintiff focuses on her request for a rented

15   hospital bed.  (Dkt. No. 76.)

16        Plaintiff has offered evidence sufficient to compel the finding by every reasonable trier of

17   fact that the June 17, 2019 request for a rented hospital bed was reasonable on its face, ordinarily

18   or in the run of cases.  ESA does not have a policy prohibiting guests from having hospital beds in

19   their rooms and indeed grants requests for a hospital bed.  (Dkt. No. 67-1 at 84–85, 88–89, 92–93.)

20   And in November 2019, Defendants offered to reimburse Plaintiff for having a rented hospital bed

21   in her temporary ESA location.  (Dkt. No. 68-2 at 73.)  Further, to accommodate Plaintiff,

22   Defendants rented a hospital bed in March 2021 with a one-day turnaround, at a cost of $450 (for

23   an unclear length of time); it was placed in an ESA hotel room.  (Dkt. No. 67-1 at 137–40, 142,

24

25   ─────────────────────────
     [11] Plaintiff's earlier email to Defendants could support an inference that she requested a rented
26   hospital bed on June 8, 2019: "If the hotel did not[]have a hospital bed I asked that you negotiate
     with the[]hotel and then move mine to the hotel."  (*Id.* at 114; *see* Dkt. No. 72-3 at 18
27   (Defendants' corporate representative testifying the email "seems to allude to being fine with not
     her personal bed").)  Drawing inferences in Defendants' favor, however, a reasonable trier of fact
28   could infer that Plaintiff was requesting a hospital bed provided by the hotel, not a rented bed.

                                        13

152.)  Therefore, Plaintiff has met her burden to show a rented hospital bed is reasonable "ordinarily or in the run of cases."  *Giebeler*, 343 F.3d at 1157 (cleaned up); *see id.* at 1158 (noting that other instances of implementing the accommodation, whether as a disability accommodation or not, are evidence of reasonableness); *see, e.g.*, *Kuhn ex rel. Kuhn v. McNary Estates Homeowners Ass'n, Inc.*, 228 F. Supp. 3d 1142, 1151 (D. Or. 2017) (concluding that plaintiffs, who requested to park an RV in their driveway, met their initial burden with evidence that RV would be within property line and driveway was on dead-end street with little traffic).

The same evidence satisfies Plaintiff's burden of offering evidence that the requested accommodation was reasonable and possible.  *Giebeler*, 343 F.3d at 1157; *see also Montano v. Bonnie Brae Convalescent Hosp., Inc.*, 79 F. Supp. 3d 1120, 1127 (C.D. Cal. 2015) (reasoning that defendant's having made some of the requested accommodations was evidence that the requested accommodations were reasonable and possible).  Defendants' argument that there is a disputed issue as to whether the requested accommodation was possible misstates Plaintiff's burden.  As explained above, *Giebeler* requires Plaintiff to produce evidence of reasonableness and possibility to satisfy her burden—it does not require that she prove it as a matter of undisputed fact.

Finally, Defendants' insistence that the undisputed fact that in March 2021 they provided Plaintiff with the requested accommodation of a rented hospital bed is irrelevant is incorrect.  Evidence that 10 months after Plaintiff requested a rented hospital bed as an accommodation Defendants provided her with that very accommodation is *evidence* that the requested accommodation was possible.  *See Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 820 (9th Cir. 1999) (holding that evidence that the defendant had made the requested accommodation in the past is persuasive evidence of reasonableness).  ESA's testimony that it regularly grants such requests is also *evidence* that the rented hospital bed request was possible.  Thus, Plaintiff has satisfied her prima facie burden on reasonableness.  *See Giebeler*, 343 F.3d at 1157.

### c.      Defendants' Burden

As Plaintiff has satisfied her burden on the "reasonable accommodation" element, the burden moves to Defendants to show that there is at least a genuine dispute as to whether Plaintiff's requested accommodation posed an undue hardship or was otherwise unreasonable.  *Id.*

14

United States District Court
Northern District of California

1    Defendants insist that a reasonable trier of fact could find that Plaintiff's request was not

2  reasonable, or posed an undue hardship, because Defendants could not find a hotel with an ADA-

3  compliant room that would also allow a rented bed.  (Dkt. No. 73 at 21.)  There is nothing in the

4  record, however, that supports an inference that Defendants inquired of ESA or any potential

5  location as to whether it would allow a rented hospital bed.  Defendants' corporate representative

6  Ms. Weber testified that she did not know when Ms. Ramirez and Ms. Dogan called ESA

7  Oakland-Emeryville to ask whether it would allow Plaintiff's personal hospital bed and she did

8  not know if they asked whether it would allow a rented bed instead.  (Dkt. No. 67-1 at 49; Dkt.

9  No. 74 at 11.)  Ms. Dogan does not attest that she ever asked about a rented hospital bed.  (Dkt.

10  No. 68-3.)  Nor have they offered any evidence that a hospital bed would have been difficult to

11  rent, would have needed a lot of turn-around time, or would have been unreasonably expensive.

12  (*See* Dkt. No. 74 at 11–12 (did not know whether Defendants looked into cost or vendors of rental

13  hospital beds).)  The record is undisputed that Defendants did not ask about the possibility of a

14  rented hospital bed for the June 2019 relocation despite Plaintiff's counsel expressly emailing

15  Defendants' counsel handling the accommodation request: "It also occurred to me that the hotels

16  may be objecting to bringing someone's personal bed into the hotel for (misplaced) hygiene

17  reasons *and so would respond better if Mercy were renting a hospital bed to be delivered directly*

18  *to the hotel from a vendor*."  (Dkt. No. 67-1 at 117 (emphasis added).)  Defendants do not argue,

19  let alone offer evidence, that they did not receive this accommodation request.

20    Defendants instead argue that as of June 17, they understood that ESA Oakland-Emeryville

21  would not allow furniture to be moved around within or removed from its hotel rooms.  (Dkt. No.

22  73-3 at 53 (Ms. Ramirez's May 31 email: "We may have to place her in a temp convalescent

23  environment to meet her accommodation or rent an apartment.  The hotel can not remove the

24  furniture at this location we have already secured.").)  They argue a reasonable trier of fact could

25  infer that Defendants reasonably believed ESA Oakland-Emeryville would not allow a rented bed

26  and asking would have been futile, making a rented bed unreasonable under the circumstances.

27  This inference is not reasonable for two reasons.

28    First, Defendants offer no admissible evidence that ESA Oakland-Emeryville would not

1    allow furniture to be moved around.  The email from Ms. Ramirez is inadmissible double hearsay.

2    (Dkt. No. 76 at 5 (arguing that Defendants' entire defense "is based upon irremediable hearsay").)

3    It is being offered by an out-of-court declarant (Ms. Ramirez) about the statement of another out-

4    of-court declarant (an unknown ESA employee) for the truth: that ESA Oakland-Emeryville would

5    not allow its furniture to be moved out.  *See* Fed. R. Evid. 801(c).  That Defendants' corporate

6    representative read the email does not make it non-hearsay.  (Dkt. No. 68-2 at 10 ¶¶ 49–50.)

7    Thus, the ESA corporate representative's testimony that it does allow furniture to be moved, (Dkt.

8    No. 67-1 at 84–85, 88–89), is undisputed.

9         Second, even if the email was admissible as substantive evidence, it does not support a

10   finding that complying with Plaintiff's request for a rented hospital bed was unreasonable or an

11   undue burden.  In the email Ms. Ramirez reports that "[t]he hotel can not remove the furniture *at*

12   *this location we have already secured*."  (Dkt. No. 73-3 at 53 (emphasis added).)  Instead, the trier

13   of fact would be compelled to find that Defendants have not established unreasonableness or

14   undue hardship because there is no evidence they contacted any other relocation options to ask if

15   they would allow a rented hospital bed.  (*See* Dkt. No. 67-1 at 50 (did not know which other ESAs

16   they contacted or when); Dkt. No. 72-3 at 9–10 (did not know whether anyone spoke to Plaintiff

17   about option of convalescent home, or why option of leasing apartment did not work out), 12–13

18   (did not know which other hotels they contacted or when); *see also* Dkt. No. 68-3 ¶¶ 9–11, 14

19   (Ms. Dogan attesting to contacting other ESAs, other hotels, apartments, and a convalescent

20   facility only about a personal hospital bed.)  To the contrary, there is evidence that they rejected

21   Plaintiff's request two days later on June 19 and, in doing so, only made reference to hotels

22   refusing to allow her to bring her personal hospital bed.  (Dkt. No. 67-1 at 119–20.)

23        Defendants also argue that they have met their burden by establishing that they offered

24   alternative accommodations.  (*See* Dkt. No. 67-1 at 119–20 (June 19: Defendants offered three

25   options); Dkt. No. 68-2 at 60–61 (June 19: Plaintiff chose to go to ESA Oakland-Emeryville); Dkt.

26   No. 72-7 at 2–3 (June 20: Plaintiff's counsel wrote to Defendants' counsel that the alternatives

27   were not reasonable).)  However, Defendants do not cite any legal authority for the proposition

28   that offering an alternative accommodation either (1) shows that the requested accommodation

1    would cause undue hardship or (2) rebuts a showing that the requested accommodation is

2    reasonable.  *See Giebeler*, 343 F.3d at 1158.

3         Defendants cite to *Elliott*, which granted summary judgment to the defendants because the

4    requested accommodation—moving to a two-bedroom unit—was not possible.  2018 WL

5    2933467, at *12.  As explained above, Defendants here have not identified evidence from which a

6    reasonable trier of fact could conclude that a rented hospital bed was not possible given that there

7    is no evidence they ever inquired of any potential location about a rented hospital bed.  The rest of

8    the *Elliott* analysis is not relevant because the court concluded that the requests at issue either were

9    not requests for disability accommodations, were not necessary to afford the plaintiff equal use of

10   the dwelling, or were not refused.  *Id.* at *6–14.  *Johnson* is similarly unpersuasive as the court

11   granted summary judgment to the defendant because either the requested accommodation was

12   never refused or there was no nexus between the requested accommodation and the plaintiff's

13   disabilities.  2022 WL 981295, at *8–9.  In sum, every reasonable trier of fact would be compelled

14   to find that Defendants have not identified evidence sufficient to create a genuine dispute that

15   Plaintiff's June 17 request for a rented hospital bed would have caused undue hardship or was

16   unreasonable under the circumstances.  *See Giebeler*, 343 F.3d at 1158.

17         **2.      November 2019 Relocation**

18              **a.      Requested Accommodation**

19         The record compels a finding by every reasonable trier of fact that Plaintiff, through her

20   attorney, requested a rented hospital bed as of November 5, 2019 at the latest (the first day of the

21   15-day relocation).  (Dkt. No. 68-2 at 67 (Plaintiff's counsel emailing Defendants' relocation

22   specialist Ms. Escobedo: "This request requires that Mercy Housing be prepared to order and have

23   a hospital bed delivered to Ms. Skochko at the hotel . . . .").)  The request was reiterated on

24   November 10, 2019: "At this point we are asking for a formal reasonable accommodation for

25   Mercy to rent such a medical bed immediately and have it delivered to Ms. Skochko's room at the

26   Extended Stay in Alameda."  (Dkt. No. 73-3 at 427.)  While there is evidence of an earlier request

27   for a personal hospital bed, for purposes of summary judgment Plaintiff's motion is based upon

28   her request for a rented hospital bed.  (Dkt. No. 76.)

b.    **Plaintiff's Reasonableness Burden**

Plaintiff has satisfied her burden of showing that her November 5, 2019 requested accommodation was reasonable.  The request was reasonable on its face and she has offered evidence that it was possible for the same reasons as her June 2019 request.  *See supra* at 13–14. Defendants thus bear the burden of showing that the requested accommodation would pose an undue hardship or of rebutting Plaintiff's evidence of the reasonableness of the requested accommodation.  *See Giebeler*, 343 F.3d at 1157.

c.    **Defendants' Burden**

Defendants have not identified evidence sufficient to create a genuine dispute that Plaintiff's request for a rented hospital bed was unreasonable under the circumstances or would pose an undue hardship.  *See Giebeler*, 343 F.3d at 1158 (concluding that the defendant failed to carry burden even though it "identified some administrative burdens and expenses that could result from" the requested accommodation).  Even drawing the inference that Plaintiff did not request a rented hospital bed until November 5, (*see* Dkt. No. 68-2 at 67, 146, 149–50), Plaintiff's relocation continued for the following 15 days.

Further, as with the June 2019 relocation, there is no admissible evidence that Defendants ever contacted any location, including the one it had contracted to relocate Plaintiff, regarding the possibility of a rented bed.  The day following Plaintiff's November 5 request for a rented hospital bed, Defendants' counsel emailed Plaintiff's counsel that it was "simply not feasible" for Plaintiff to bring her personal hospital bed.  (Dkt. No. 68-2 at 71.)  The email did not acknowledge the request for a rented hospital bed nor explain why transporting her personal hospital bed was not feasible.  (*Id.*)  Only after Plaintiff's counsel emailed Defendants' counsel on November 10 that the hotel would, in fact, accept a rented hospital bed did Defendants communicate that they would "consider" the request for a rented bed and that Plaintiff could arrange her own rental, but they could not guarantee she would be reimbursed.  (*Id.* at 73.)  On November 12, Defendants offered to reimburse Plaintiff up to $1,500; Plaintiff's counsel responded that Plaintiff could not afford to pay anything out of pocket.  (*Id.*; Dkt. No. 67-1 at 129.)

As with their alternatives to Plaintiff's June 2019 request, Defendants' proposed

18

alternatives to her November 2019 request do not meet their burden to either (1) show that the requested accommodation would cause undue hardship or (2) rebut Plaintiff's showing that the requested accommodation is reasonable.  *See Giebeler*, 343 F.3d at 1158.  At oral argument, Defendants insisted that given the Veterans Day holiday they did not have time to respond.  But that argument does not explain why they ignored Plaintiff's November 5, 2019 request for a rented hospital bed; nor why it would have been an undue burden for Defendants to arrange and pay for the bed in the first instance, even if it did not occur until a week into Plaintiff's 15-day stay.

In sum, every reasonable trier of fact would be compelled to find that Defendants have not identified evidence sufficient to support a finding that Plaintiff's November 5 request for a rented hospital bed would have caused undue hardship or was unreasonable under the circumstances.  *See Giebeler*, 343 F.3d at 1158.

\* \* \*

On this record, there is no genuine dispute that Plaintiff (1) has a disability as defined by the statute; (2) defendants knew of her disability; (3) accommodation of her disability may be necessary to afford her an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation.  Further, there is no genuine dispute that Plaintiff requested a rented hospital bed by June 17, 2019, two days before her 66-day relocation, and by November 5, 2019, the first day of her 15-day relocation.  Every reasonable trier of fact would be compelled to find that the requests were reasonable on their face.  Finally, there is insufficient evidence from which a reasonable trier of fact could find that the request would cause undue hardship for Defendants or would be unreasonable under the particular circumstances.

Accordingly, Plaintiff is entitled to summary judgment on her failure to accommodate claims under the FHA, FEHA, and DPA; her motion for partial summary judgment is GRANTED. *See Dubois*, 453 F.3d at 1179; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1968).

III.    **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

A.      **FHA, FEHA, AND DPA**

As the Court has concluded that Plaintiff is entitled to a finding that Defendants failed to

19

1   accommodate her requests in June 2019 and November 2019 as a matter of law, Defendants'

2   motion for summary judgment on those claims is DENIED.

3       **B.      UNRUH ACT**

4       Plaintiff asserts that Defendants' failure to accommodate her disabilities was intentional

5   discrimination in violation of the Unruh Act, California Civil Code § 51(b).  (Dkt. No. 1 ¶¶ 58–

6   65.)  Defendants move for summary judgment on this claim.

7       To prevail on a Section 51(b) claim, a plaintiff must establish that: "(1) [she] was denied

8   the full and equal accommodations, advantages, facilities, privileges, or services in a business

9   establishment; (2) [her] disability was a motivating factor for this denial; (3) defendants denied

10  plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; [] (4)

11  defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm," and (5)

12  "intentional discrimination," that is, "willful, affirmative misconduct."  *Greater L.A. Agency on*

13  *Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) (cleaned up);

14  *Glasby v. Mercy Hous., Inc.*, No. 17-cv-02153-DMR, 2017 WL 4808634, at *3 (N.D. Cal. Oct. 25,

15  2017) (cleaned up); *see Munson v. Del Taco*, 208 P.3d 623, 627 (Cal. 2009).  "[N]umerous courts

16  in this circuit have held that restricting or prohibiting a tenant's access to facilities and services in

17  an apartment complex violates the Unruh Act."  *Glasby*, 2017 WL 4808634, at *4.  Moreover,

18  courts have held that Section 51(b) "can encompass a claim for intentional discrimination in the

19  form of a failure to provide reasonable accommodation to a person with a disability."  *Id.* at *6.

20      For example, in *Wilkins-Jones v. County of Alameda*, 859 F. Supp. 2d 1039, 1051–53

21  (N.D. Cal. 2012), the district court held that the plaintiff had failed to state a Section 51(b) claim.

22  She alleged that the defendants "specifically noted certain of her disabilities," "yet failed to

23  accommodate her."  *Id.* at 1052.

24          However, she also alleges that Defendants provided certain limited
            (and she alleges, inadequate) accommodations; for example, an extra
25          blanket and extra mattress. . . .  That Defendants provided some, but
            not all, accommodations to Plaintiff tends to negate an inference that
26          Defendants' conduct was purposefully discriminatory.  Moreover,
            Plaintiff has not clearly alleged that she directly asked [Defendants]
27          for any particular accommodation which was refused or that her
            disabilities warranting such additional accommodations were obvious
28          and should have been known by [Defendants].  Rather, she merely

United States District Court
Northern District of California

1

2

3

> alleges that Defendants did not fully and timely comply with, *e.g.*, her requests for medication (some were provided), and that County employees (not [Defendants'] employees) refused her requests for a wheelchair based on the inadequate assessments performed by Defendants. These are insufficient to reasonably infer discriminatory intent on the part of [Defendants].

4   *Id.* at 1052–53 (citations omitted); *cf. Earll v. eBay, Inc.*, No. 5:11–cv–00262–JF (HRL), 2011 WL

5   3955485, at *4 (N.D. Cal. Sept. 7, 2011) ("That Earll did not succeed in verifying her identity

6   through these alternative means does not reasonably imply that eBay was unwilling or unable to

7   remedy the situation. . . . eBay's actions do not necessarily amount to an intentional denial of

8   access to a public accommodation.").

9       Here, drawing all inferences in Plaintiff's favor, a reasonable jury could conclude that

10  Defendants' conduct amounted to intentional discrimination. There is no genuine dispute that:

11  Plaintiff's disabilities were obvious and known to Defendants; for the June 2019 relocation,

12  Plaintiff directly asked Defendants for her personal hospital bed and for a rented hospital bed,

13  which were refused; Defendants' property manager recommended the personal hospital bed

14  request be granted; for the November 2019 relocation—after the June 2019 experience—Plaintiff

15  directly asked Defendants for a rented hospital bed, which was refused; Defendants kept no

16  written records of their contacts with ESA Oakland-Emeryville or other relocation options; and

17  Plaintiff spent a total of 81 days without a hospital bed, in pain. Additionally, although there are

18  genuine disputes, there is sufficient evidence from which a reasonable jury could find that:

19  Plaintiff made her requests repeatedly as the relocations neared; Defendants did not ask ESA

20  Oakland-Emeryville or any other relocation facilities whether they would allow a rented hospital

21  bed; and Defendants did not look into the cost or vendors of rented hospital beds. On this record,

22  drawing all inferences in Plaintiff's favor, a reasonable jury could find willful, affirmative

23  misconduct under the Unruh Act. *See Greater L.A. Agency on Deafness*, 742 F.3d at 425.

24      Accordingly, Defendants' motion for summary judgment is DENIED as to Plaintiff's

25  Unruh Act claim.

26      **C.    PUNITIVE DAMAGES**

27      Plaintiff's FHA and FEHA claims allege Defendants "knowing[ly] and intentional[ly]

28  violated" her rights, (Dkt. No. 1 ¶¶ 47, 56); her complaint includes a prayer for punitive damages,

United States District Court
Northern District of California

21

(*id.* at 16).  Defendants move for summary judgment on the issue of punitive damages.

Under the FHA, punitive damages may be awarded "when a defendant's conduct is shown to be motivated by evil motive or intent, or if it involves reckless or callous indifference to the federally protected rights of others."  *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  The focus is on the defendant's state of mind, and punitive damages may be warranted if the defendant knew it was violating the law or perceived a risk that its conduct would violate the law.  *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535–39 (1999); *Holland v. Related Cos., Inc.*, No. 15-cv-03220-JSW, 2017 WL 3086104, at *5–6 (N.D. Cal. July 20, 2017) (applying *Kolstad* to FHA claim on summary judgment).  Thus, "in general, intentional discrimination is enough to establish punitive damages liability"; however, there are a few exceptions for situations in which the defendant "is aware of the specific discriminatory conduct at issue, but nonetheless reasonably believes that the conduct is lawful."  *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 515 (9th Cir. 2000).

Here, a reasonable jury could conclude that Defendants' conduct amounted to reckless or callous indifference.  As explained above, a reasonable jury could conclude that Defendants' conduct amounted to intentional discrimination.  Drawing all inferences in Plaintiff's favor, there is also sufficient evidence to conclude that Defendants did not *reasonably* believe their conduct was lawful.  *See id.*  If the jury infers that Defendants did not ask ESA Oakland-Emeryville or any other relocation facilities whether they would allow a rented hospital bed and never investigated the cost or vendors of rented hospital beds, then the jury could also infer that any belief on Defendants' part that their conduct was lawful was unreasonable.  *See Holland*, 2017 WL 3086104, at *9 ("The Court cannot weigh the evidence or make credibility determinations . . . . Plaintiffs have put forth sufficient evidence from a which a reasonable jury could conclude that Defendants, at the very least, acted in the face of a perceived risk that their actions would violate federal law." (cleaned up)).  Indeed, given the ESA corporate representative's testimony, and Defendants' inability to identify any persons, dates, or for the most part even hotels they allegedly queried about bringing a personal hospital bed, a reasonable trier of fact might find that Defendants made no good faith inquiry at all.  Accordingly, Defendants' motion for summary

United States District Court
Northern District of California

United States District Court
Northern District of California

1    judgment is DENIED as to Plaintiff's prayer for punitive damages under the FHA.

2            Under FEHA, punitive damages may be awarded if the defendant's conduct is malicious,

3    oppressive, or fraudulent, proven by clear and convincing evidence.  Cal. Civ. Code § 3294(a).

4    Plaintiff asserts oppressive conduct, (*see* Dkt. No. 71 at 29), meaning "despicable conduct that

5    subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."  Cal.

6    Civ. Code § 3294(c)(2).  Despicable means "circumstances that are base, vile, or contemptible."

7    *Holland*, 2017 WL 3086104, at *9 (cleaned up) (citing *Coll. Hosp. Inc. v. Superior Court*, 882

8    P.2d 894, 907 (Cal. 1994)).

9            Here, for similar reasons, a reasonable jury could find that Defendants' conduct was

10   oppressive.  There is sufficient evidence in the record to support a finding that Defendants

11   consciously disregarded Plaintiff's right to reasonable accommodation and that she suffered unjust

12   hardship as a result.

13           Accordingly, Defendants' motion for summary judgment is DENIED as to Plaintiff's

14   prayer for punitive damages under FEHA.

15                                          **CONCLUSION**

16           Defendant Mercy Housing, Inc.'s motion for summary judgment is GRANTED.  (Dkt. No.

17   66.)

18           Plaintiff's motion for partial summary judgment regarding her FHA, FEHA, and DPA

19   claims is GRANTED as to Defendants Mercy Housing Management Group, Inc. and Mercy

20   Housing California, but DENIED as to Defendant Mercy Housing, Inc.  (Dkt. No. 67.)  To the

21   extent Plaintiff pleaded any other theory under the FHA, FEHA, or DPA, (*see* Dkt. No. 1 ¶¶ 42–

22   57, 66–74), she has withdrawn it in her briefing and argument.

23           Defendants' motion for summary judgment is DENIED.  (Dkt. No. 68.)

24           At the summary judgment hearing the parties expressed a willingness to engage in further

25   settlement discussions.  Magistrate Judge Westmore is not available in advance of the November

26   trial date; accordingly, the Court is exploring other options.  The parties, too, are encouraged to

27   meet and confer on further settlement proceedings.

28           This Order disposes of Docket Nos. 66, 67, 68.

1          **IT IS SO ORDERED.**

2     Dated: August 15, 2022

3

4     _____

5     JACQUELINE SCOTT CORLEY
      United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28